IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 09-cv-01862-ZLW-MEH

WILDEARTH GUARDIANS,

    Plaintiff,

v.

PUBLIC SERVICE COMPANY OF COLORADO d/b/a XCEL ENERGY,

    Defendant.

_____

ORDER
_____

The matter before the Court is Defendant's Motion To Dismiss (Doc. No. 17). The Court has determined that the motion can be resolved on the parties' briefing and that no oral argument is necessary.

**BACKGROUND**

Defendant owns and operates the Cherokee Power Station (Cherokee), a coal-fired power plant located in Adams County, Colorado. In February 2002, the Air Pollution Control Division of the Colorado Department of Public Health and Environment issued a permit to Defendant, pursuant to Title V of the Clean Air Act (CAA),[1] for the operation of Cherokee (Permit).

---

[1] 42 U.S.C. §§ 7661-7661f; *see* Sierra Club v. Georgia Power Co., 443 F.3d 1346, 1348-50 (11th Cir. 2006) (description of the Title V permitting process).

Under the Permit, Defendant is obligated to perform opacity[2] monitoring of the smokestack exhaust emitted by each of Cherokee's four operating units.[3] Opacity is measured using continuous opacity monitors (COMS) located within the plant's smokestacks. These COMS must operate whenever a unit is active, with certain defined downtime exceptions.[4]

Plaintiff's First Claim alleges Defendant violated the Permit's continuous monitoring requirements by incurring 2,194 hours of COMS downtime between August 6, 2004 and August 6, 2009.[5] Plaintiff claims this downtime does not fall within one of the exceptions provided under the Permit, the CAA, and the CAA Regulations (40 C.F.R. Part 75).[6] Plaintiff alleges this downtime is unexcused because it includes both repeated monitor equipment and communication failures and was a result of similar, foreseeable malfunction events.[7]

---

[2] "'Opacity' refers to the visibility of the emissions exiting the stack. A 100% opacity would mean that no light at all could pass through the emissions, whereas 0% opacity would mean light passes completely through the emissions and they are effectively invisible. While opacity itself is not a regulated pollutant, it acts as a measurement surrogate for particulate matter, which is a regulated pollutant for which the Environmental Protection Agency has set national ambient air quality standards." Georgia Power, 443 F.3d at 1350 n.4.

[3] Mem. Br. In Supp. Of Mot. To Dismiss [hereinafter Supp. Br.] (Doc. No. 18), Ex. A at 6-9. The Permit was specifically referenced by Plaintiff in its Complaint, and there is no dispute as to its authenticity. As such, reference to the Permit, the details of which do not appear explicitly in the Complaint, does not convert the motion to dismiss to a motion for summary judgment. Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007).

[4] Supp. Br., Ex. A at 6; *see* 40 C.F.R. Part 75.

[5] Complaint (Doc. No. 1) at 15 ¶¶ 58-63.

[6] Id. at 15 ¶ 61.

[7] Id.

Plaintiff's Third Claim alleges Defendant violated the certification requirements under the Permit by not accurately reporting its downtime violations at the Cherokee plant and by not certifying the accuracy and completeness of the reports that were submitted.[8]

Defendant is seeking dismissal of Claims One and Three[9] pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Additionally, Defendant is seeking dismissal of the entire case pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

**LEGAL STANDARD**

Jurisdictional issues must be addressed at the beginning of every case and, if jurisdiction is found to be lacking, the case or claim comes to an immediate end.[10] It is Plaintiff's burden to establish this Court's subject matter jurisdiction over its claims.[11] When analyzing a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1), "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. . . . A court has wide discretion to allow

---

[8] Id. at 17 ¶¶ 69-73.

[9] Plaintiff's Claim Two alleges actual violations of opacity limitations. Id. at 16-17 ¶¶ 64-68. Defendant does not seek dismissal of this claim in its motion to dismiss.

[10] In re Franklin Savings Corp., 385 F.3d 1279, 1286 (10th Cir. 2004).

[11] Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998).

affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[12]

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"[13] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] "'[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'"[15] "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."[16] Legal conclusions couched as factual allegations are insufficient evidence to defeat a motion to dismiss.[17]

---

[12] Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).

[13] Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting* Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).

[14] Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

[15] Robbins, 519 F.3d at 1247 (*quoting* Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)) (emphasis in original).

[16] Robbins at 1247 (*quoting* Twombly, 127 S. Ct. at 1965).

[17] *See* Twombly at 1949-50.

**ANALYSIS**

Standing

Defendant requests dismissal of the entire case pursuant to Fed. R. Civ. P. 12(b)(1) for Plaintiff's failure to allege facts sufficient to show it has standing to bring this suit.

To establish standing, Plaintiff has the burden to demonstrate

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[18]

Plaintiff has alleged the following facts regarding standing. Plaintiff is a non-profit membership organization with approximately 4,000 members.[19] Some of Plaintiff's Colorado members "live, work, garden, and engage in outdoor recreation in areas affected by Cherokee."[20] These members are injured by Defendant's failure to comply with the Clean Air Act.[21] A favorable decision in this case would redress the harms to these members.[22]

---

[18] Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (*citing* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

[19] Complaint at 4 ¶ 8.

[20] Id.

[21] Id.

[22] Id.

Defendant argues that Plaintiff has provided no evidence that a lack of opacity monitoring is either an "injury in fact" or that Plaintiff's injuries are allegedly traceable to Defendant's actions. This argument neglects the underlying purpose of the CAA.

The CAA was designed "to protect and enhance the quality of the Nation's air resource so as to promote the public health and welfare and the productive capacity of the population."[23] Under the Act, opacity monitoring has been authorized to quantitatively measure the air quality.[24] Violation of this monitoring is illegal and punishable by law.[25] Thus, under the CAA, violation of opacity monitoring is necessarily an injury in fact attributable to the monitoring violator.

Plaintiff here has adequately alleged that Defendant violated its opacity monitoring requirements under the Permit. Additionally, Plaintiff has adequately alleged that some of its members live within a reasonable zone of influence around Cherokee, and these members' "recreational, aesthetic, and economic interests" are affected by Cherokee's excessive pollution.[26] Therefore, Plaintiff has met its burden that it has

---

[23] 42 U.S.C. § 7401(b)(2).

[24] *See* 40 C.F.R. Part 75.

[25] 42 U.S.C. § 7651k(e). "The [CAA] gives 'any person' the authority to bring a civil action on his or her own behalf 'against any person . . . who is alleged to have violated . . . an emission standard or limitation under this chapter." Georgia Power, 443 F.3d at 1349 (*quoting* 42 U.S.C. § 7604(a)(1)).

[26] Laidlaw, 528 U.S. at 184; Sierra Club v. Simkins Industries, Inc., 847 F.2d 1109, 1113 (4th Cir. 1988) (failure to report pollutants adequately established injury and threat of further injury); Valley Forge Christian College v. Americans United For Separation of Church & State, Inc., 454 U.S. 464 (1982) (threatened, rather than actual injury, can meet minimum Article III standing requirements); *cf.* Lujan, 497 U.S. at 889 (unlike Plaintiff here, Lujan plaintiff did not provide sufficient specifics to support standing).

standing to bring this lawsuit and Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is denied.[27]

COMS Violations

Defendant requests dismissal of Claim One for failure to state a claim upon which relief can be granted. Defendant argues that Claim One fails to allege conduct that constitutes a violation of applicable opacity monitoring requirements.

Determination of Defendant's COMS obligations is determined solely by examining the text of the Title V Permit issued in February 2002.[28] The pertinent part of the Permit is the following section:

> 10.2.1 The permittee shall ensure that all continuous emission and opacity monitoring systems required are in operation and monitoring unit emissions or opacity at all times that the boiler combusts any fuel except as provided in 40 CFR 75.11(e) and during periods of calibration, quality assurance, or preventative maintenance performed pursuance [sic] to 40 CFR Part 75 75.21 and Appendix B, periods of repair, periods of backups of data from the data acquisition and handling system or recertification performed pursuant to 40 CFR 75.20.[29]

---

[27] *See*, *e.g.*, Sierra Club v. Morton, 405 U.S. 727, 734-36 (1972) (environmental issues are sufficient injuries to provide standing, given that the party seeking review is among those that are injured).

[28] "The intent of Title V is to consolidate into a single document (the operating permit) all of the clean air requirements applicable to a particular source of air pollution. The Title V permit program generally does not impose not substantive air quality control requirements. Rather, a Title V permit 'enable[s] the source, States, EPA, and the public to understand better the requirements to which the source is subject, and whether the source is meeting those requirements.'" Georgia Power, 443 F.3d at 1348-49 (*quoting* Operating Permit Program, 57 Fed.Reg. 32,250, 32,251 (July 21, 1992) (codified at 40 C.F.R. § 70)); Sierra Club v. Johnson, 541 F.3f 1257, 1260 (11th Cir. 2008). Collateral review of the Permit requirements is not allowed in this action. 42 U.S.C. § 7607(b)(2); *see* Georgia Power, 443 F.3d at 1356-57 n.15.

[29] Supp. Br., Ex. A at 6.

After reviewing Plaintiff's Complaint, the Court is satisfied that Claim One sufficiently states a claim upon which relief can be granted. Plaintiff has alleged 2,194 hours of COMS downtime, a claim that Defendant does not refute. Additionally, the controlling legal authority cited by Plaintiff (the Permit; CAA; federal regulations) indicates that unexcused COMS downtime is a violation of federal law. At this stage of the case, Plaintiff does not need to describe in detail why every minute of this downtime is unexcused.[30] Rather, Plaintiff just needs to demonstrate, which it has done, that it has a reasonable likelihood of mustering factual support for this claim. Specifically, Plaintiff claims "monitor equipment and communication failures" which facially do not appear to be excused downtime allowed under Section 10.2.1. Whether these downtimes are excused under the Permit is a question of fact inappropriate for resolution in a Fed. R. Civ. P. 12(b)(6) motion.[31]

Defendant strongly argues that without an allegation in the Complaint that Defendant both failed to obtain valid COMS data *and* failed to use another monitoring method authorized by the Permit, that Claim One cannot survive. The Court disagrees.

Defendant relies on Section 10.4.3 of the Permit which allows alternative monitoring techniques to be used when COMS is unavailable.[32] However, these

---

[30]A complaint only requires a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[31]The Court declines to convert this motion to a Rule 56 summary judgment motion. *See* Fed. R. Civ. P. 12(d). Since Plaintiff is already proceeding on Claim Two, Defendant is faced with the burden of discovery even if it were to be successful in a partial summary judgment decision.

[32]Supp. Br., Ex. A at 7-8.

8

alternative monitoring options are only available if COMS is "unable to provide quality assured data . . . *for more than eight (8) consecutive hours.*"[33] Defendant could violate the Permit if COMS was unavailable for less than eight hours and the COMS failure was unexcused (Section 10.2.1) or if Defendant failed to use an alternative monitoring procedure after COMS was unavailable for more than eight hours (Section 10.4.3). Thus, claiming a failure to use alternative monitoring methods is not necessary since Defendant could still violate the Permit downtime requirements even if using these alternative methods.

All of Defendant's COMS downtime may very well either be excused or covered by alternative monitoring techniques. However, this is an affirmative defense and a question of fact not suited for the limited scope of review in a motion to dismiss. Accordingly, the motion to dismiss Claim One pursuant to Fed R. Civ. P. 12(b)(6) is denied.

Reporting Violations

Defendant's motion to dismiss Claim Three is entirely contingent on this Court determining that Claim One is deficient for failure to state a claim upon which relief can be granted. Since Claim One has not been dismissed, Defendant's rationale to dismiss Claim Three is unpersuasive. The motion to dismiss Claim Three pursuant to Fed R. Civ. P. 12(b)(6) is denied.

---

[33] Id. at 7 (emphasis added).

**ORDER**

It is ORDERED that Defendant's Motion To Dismiss (Doc. No. 17; Sep. 16, 2009) is denied.

DATED at Denver, Colorado, this 15th day of April, 2010.

BY THE COURT:

*[signature: Zita Leeson Weinshienk]*

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court