**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-CV-01862-RBJ-MEH

**WILDEARTH GUARDIANS,**

    Plaintiff,

v.

**PUBLIC SERVICE COMPANY OF COLORADO
d/b/a XCEL ENERGY,**

    Defendant.

___

**CONSENT DECREE**
___

WHEREAS, Public Service Company of Colorado ("Public Service" or "Defendant") is a Colorado corporation that owns and operates the Cherokee Power Plant ("Cherokee Plant") located in north Denver, Colorado;

WHEREAS, on January 28, 2008, and April 1, 2009, WildEarth Guardians ("Plaintiff") sent certified letters ("Notice Letters") to Public Service providing notice of their intent to sue Public Service for declaratory and injunctive relief and civil penalties for alleged violations of certain conditions relating to opacity monitoring and opacity standards in Public Service's operating permit, issued by the State of Colorado pursuant to the federal Clean Air Act, for the Cherokee Plant ("Cherokee operating permit");

WHEREAS, the Complaint in this matter was filed on August 6, 2009;

WHEREAS, the Complaint seeks declaratory and injunctive relief, the imposition of civil penalties, and Plaintiff's attorneys' fees and costs of litigation;

WHEREAS, Public Service denies liability for the allegations set forth in the Complaint, and nothing herein shall constitute an admission of liability;

WHEREAS, Plaintiff and Defendant (the "Parties") have negotiated this Consent Decree ("Decree") in good faith and at arm's length, and agree that the settlement of the above-captioned action (the "Action") through this Consent Decree without further litigation is in the public interest and provides certainty for utility customers, and is a fair, reasonable, and appropriate means of resolving all claims in the Action;

WHEREAS, since the commencement of this Action, Public Service has implemented measures both voluntarily and in compliance with regulatory requirements to help ensure compliance with the opacity and opacity monitoring provisions of the Cherokee operating permit. These measures include, but are not limited to, installation of new opacity monitors, implementation of a Compliance Assurance Monitoring plan for particulate matter emissions at Cherokee Station, and changes to the process used at Cherokee for reporting opacity monitor downtime and opacity exceedances to state regulators;

WHEREAS, consistent with its implementation of the requirements of the Colorado Clean Air Clean Jobs Act, Public Service has committed to stop burning coal at the Cherokee Plant by December 31, 2017;

WHEREAS, Plaintiffs believe that, due to the operational changes and the decommissioning or refueling of the generating units at Cherokee, the alleged violations of the Cherokee operating permit that formed the basis of the Complaint have been satisfactorily addressed;

WHEREAS, the Parties anticipate that this Decree will achieve valuable environmental and community benefits by improving air quality and reducing demand for energy in the north Denver communities near the Cherokee Plant;

WHEREAS, the Parties consent to the entry of this Decree without further trial, argument, or appeal;

WHEREAS, pursuant to Section 304 of the Clean Air Act ("Act"), 42 U.S.C. § 7604(c)(3), this Consent Decree is being forwarded to the United States Department of Justice and to the United States Environmental Protection Agency ("EPA") for the statutorily-mandated forty-five (45) day review period;

NOW, THEREFORE, with the consent of the Parties and without any admission or adjudication of the violations alleged in the Complaint or the Notice Letters, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

1. This Court has jurisdiction over the Parties and the subject matter of the Action pursuant to Section 304 of the Clean Air Act, 42 U.S.C. § 7604, the citizen suit provision of the Act, and pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this judicial district under Section 304(c) of the Act, 42 U.S.C. § 7604(c), and under 28 U.S.C. § 1391.

3. Upon entry, the provisions of this Consent Decree shall apply to and be binding upon the Parties, as well as the Parties' officers, employees, agents, successors and assigns.

4. Within 30 days of the date of entry of the Decree by the Court, Public Service will pay $447,000.00 to the recipient named in Appendix A to be used exclusively to provide funding for specific environmentally beneficial projects in north Denver, Colorado, as described further

and under conditions set forth in Appendix A. Notice of the payment shall be provided to Plaintiff consistent with Paragraph 6 of this Consent Decree.

5.  Counsel for Plaintiff shall provide wire transfer instructions to counsel for Public Service at least twenty (20) days prior to the date payment is due.

6.  Any notifications under this Consent Decree shall be directed to the individuals at the addresses specified below by United States Mail or Overnight Courier and e-mail, unless these individuals or their successors give notice of a change to the other Parties in writing.

> As to Plaintiff:
>
> Michael Harris            *and*   Jeremy Nichols
> Environmental Law Clinic          WildEarth Guardians
> 2255 East Evans Ave.              1536 Wynkoop St.
> Suite 335                         Suite 301
> Denver, CO 80201                  Denver, CO 80202
> mharris@law.du.edu                jnichols@wildearthguardians.org
>
> As to Defendant:
>
> Kent Mayo                 *and*   Frank Prager
> Baker Botts L.L.P.                Public Service Company of Colorado
> 1299 Pennsylvania Ave NW          1800 Larimer St.
> Washington, DC 20004              Denver CO 80202
> kent.mayo@bakerbotts.com          Frank.Prager@xcelenergy.com

7.  The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Consent Decree.

8.  Pursuant to 42 U.S.C. § 7604(c)(3), this Consent Decree shall be lodged with the Court and simultaneously provided to the United States Department of Justice and the United States Environmental Protection Agency (collectively, the "United States") for review and comment for a period not to exceed forty-five (45) days.

9. If the United States does not object or intervene within forty-five (45) days of receipt, the Parties shall submit a joint motion to the Court seeking entry of the Consent Decree.

10. Entry of this Consent Decree shall:

a. Cause dismissal, with prejudice, of Plaintiff's Complaint in the Action;

b. Resolve any and all claims or potential claims of Plaintiff, including but not limited to claims under the Clean Air Act and its implementing regulations, the Colorado State Implementation Plan, state and local air quality regulations, the Cherokee Plant Title V Operating Permit, or any other permit applicable to the Cherokee Plant for alleged violations relating to (i) opacity limitations and any exceedances of those limitations, (ii) opacity monitoring requirements and any opacity monitor downtime, and (iii) reporting requirements regarding opacity, opacity monitoring, or opacity monitoring downtime at the Cherokee Plant that occurred prior to entry of the Decree, including but not limited to those claims alleged, or that could have been alleged, in the Complaint and Notice Letters in the Action.

c. Resolve any and all claims or potential claims of Plaintiff, related to any coal-fired generating unit presently or formerly operated by Public Service within Colorado, under the Clean Air Act and its implementing regulations, the Colorado State Implementation Plan, state and local air quality regulations, any relevant Title V Operating Permit, or any other operating or construction permit for alleged violations relating to (i) opacity limitations and any exceedances of those limitations, (ii) opacity monitoring requirements and any opacity monitor downtime, and (iii) reporting requirements regarding opacity, opacity monitoring, or opacity monitoring downtime that occurred prior to entry of the Decree.

11. This Consent Decree constitutes the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree,

and supersedes all prior agreements and understandings among the Parties related to the subject matter herein.  No document, representation, inducement, agreement, understanding, or promise constitutes any part of this Consent Decree or the settlement it represents, nor shall they be used in construing the terms of this Consent Decree.

12. Each Party shall bear all of its own attorneys' fees related to the Action.  The Parties agree that any claims for litigation costs shall be resolved through a separate agreement.

13. Each Party agrees that any public statements, including press releases or any other oral, written or electronic communication, regarding the lawsuit, the settlement, or the consent decree terms will focus on the benefits to the north Denver, Colorado, communities receiving funding for beneficial projects.  Neither Party shall make any public statement, including press releases or any other oral, written or electronic communication, that might reasonably be construed as negative, derogatory or critical of the opposing Party, including but not limited to any actions relating to the Action and its resolution, or any matter addressed by this Decree.  The Parties agree to provide each other with draft versions of any press releases or public statements regarding the Consent Decree at least two days prior to the date of lodging of the Consent Decree with the Court, and to respond in good faith to any comments or requests for changes received from the other Party.  Violation of this non-disparagement clause shall be grounds for the other Party to remove its consent from the proposed Consent Decree.

14. Modifications to this Consent Decree may be made only upon written agreement of the Parties which shall be filed with the Court.

15. Pursuant to 42 U.S.C. § 7604(c)(3), the United States shall be provided with the opportunity to review and comment upon any proposed modification to this Consent Decree.

16. The Decree shall terminate automatically upon receipt of the payments required to be made by Public Service under Paragraph 4 of this Decree, except that the Court shall retain jurisdiction to enforce the provisions of this Decree, inclusive of the provisions of Appendix A.

17. Each undersigned representative of the Parties certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

18. This Consent Decree may be signed in counterparts.

THE UNDERSIGNED PARTIES enter into this Consent Decree and submit it to this Court for approval and entry.

IT IS SO ORDERED.

DATED this 30th day of April, 2013.

BY THE COURT:

*/s/ Brooke Jackson*

_____
R. Brooke Jackson
United States District Judge

**Signature Page for Consent Decree**

*WildEarth Guardians v. Public Service Company of Colorado*,

**Civil Action No. 09-CV-01862-RBJ-MEH**

Dated: _____, 2013       _____
                                                John Horning, Executive Director
                                                WildEarth Guardians

**Signature Page for Consent Decree**

*WildEarth Guardians v. Public Service Company of Colorado*,

**Civil Action No. 09-CV-01862-RBJ-MEH**

Dated: _____, 2013      _____
                                                David L. Eves
                                                President and Chief Executive Officer
                                                Public Service Company of Colorado

*WildEarth Guardians v. Public Service Company of Colorado*,

Civil Action No. 09-CV-01862-RBJ-MEH

Appendix A to Consent Decree

**Environmentally Beneficial Projects**

In addition to the requirements in Paragraph 4 of the Consent Decree, the Parties agree to comply with the following requirements to ensure that the intended benefits of the $447,000 payment (the "Project Funds") by Public Service for the environmentally beneficial projects (the "Projects") described below are achieved.

A. Project Funds Recipient: The Parties have designated Groundwork Denver as the third-party recipient (the "Recipient") of the Project Funds to be paid by Public Service to fund the environmentally beneficial projects described in Section B of this Appendix. No later than ten (10) days after the date of entry of the Consent Decree, Plaintiff agrees to obtain from Groundwork Denver and provide to Defendant written confirmation that Groundwork Denver (1) has legal authority to accept funding for the Projects; (2) has the legal authority and capability to conduct the Projects; and (3) will comply with the requirements of this Appendix regarding expenditure of the Project Funds and implementation of the Projects.

B. Environmentally Beneficial Projects: The Parties intend for the Project Funds to be expended on the Projects as described below

> **1. Energy Efficiency Improvements ($172,900):** Homes in Globeville, Elyria and Swansea will be offered a package of air sealing, attic insulation, and CFL light bulbs. The Recipient expects to serve 142 households on a first-come, first-served basis with the SEP funds. The expected results are as follows:

|  | Families served | kWh saved (over life of measure) | therms gas saved (over life of measure) | $ saved per year per family | tons $CO_2$ emissions reduced (over life of measures) |
|---|---|---|---|---|---|
| Energy efficiency | 142 | 587,880 | 397,600 | $193 | 2,840 |

**2. Solar Energy ($74,100):** The Recipient will install solar PV panels on one or more public buildings in Globeville, Elyria or Swansea neighborhoods. The Recipient will work to develop a partnership with the owner of the building(s) (likely DPS or the City of Denver) to translate the energy cost savings from the project into community benefit. The Recipient expects $3,472 per year in savings that can be directed to ongoing community projects. The Recipient estimates that it will be able to install a 14 kW system, but final size will depend on the system bids that are received. Expected results are as follows:

|  | kW installed | kWh produced (over 20 years) | therms gas saved (over life of measure) | Annual $ saved plus REC payments | tons $CO_2$ emissions reduced (over life of measures) |
|---|---|---|---|---|---|
| Photovoltaics | 14 | 408,520 | 0 | $3,472 | 357 |

**3. Green Space Improvements ($200,000):** These funds will be used for the implementation of Platte Farm Open Space ("PFOS"). PFOS is a community vision for turning 5.5 acres of underutilized property in the heart of Globeville into a community natural area, while also solving flooding problems for this entire section of the South Platte River watershed. Landscape designs,

maintenance plan, title work, land survey, and environmental analysis (Phase I) have been completed. Groundwork Denver and the resident steering committee are working with the property owners and the City of Denver to determine the land-holding strategy for the site. The entire open space project implementation is estimated to cost $1.2 million (based on an estimate provided by the landscape architecture firm that designed the site). The $200,000 will be utilized to help with on-ground infrastructure improvements, solar features to provide the open space with lighting, and for other site construction costs.

C. <u>Change in Projects</u>: The Parties may agree, in writing, to change the scope of any Project, and the allocation of dollars among the specific Projects identified in Paragraph B of this Appendix or additional projects not specifically described in this Appendix that are similar to or serve similar purposes as the Projects by improving air quality and reducing demand for fossil fuel based energy. Such agreed changes do not require approval by the Court.

D. <u>Unspent Funds</u>: Any Project Funds that remain unspent as of twenty-four (24) months after the date of entry of the Consent Decree by the Court shall be directed to community environmental projects in north Denver, Colorado, that are similar to or serve similar purposes as the Projects by improving air quality and reducing demand for fossil fuel based energy. In the event that unspent Project Funds exist, Plaintiff shall inform Public Service and provide a description of the intended use for such Funds. Under no circumstances shall any of the unspent Project Funds be used to initiate or support (i) any legislative or lobbying efforts (ii) any administrative petition, rulemaking activity or action, or (iii) any judicial litigation.

E.   <u>Reporting</u>:

1. <u>Project Plans</u>:  Within 60 days of the date of entry of the Consent Decree by the Court, the Recipient shall submit to the Parties a Project plan(s) that covers each of the Projects described in this Appendix A.  Each Project plan shall describe the nature and scope of the expected activities to be completed, identify any additional parties or vendors expected to be used in completing the work, identify an estimated budget and cost allocation, and identify an expected completion date.

2. <u>Biannual Status Report:</u>  The Recipient will submit to the Parties, pursuant to the notice provision in the Consent Decree, biannual Project status reports due on January 31st and July 31st of each year while funds are being spent.  The status reports will include, at a minimum, the following information:

    - A description of activities completed to date;
    - A budget summary table listing funds expended to date by budget category;
    - A discussion of any anticipated changes to the scope or timeline of the Projects.

3. <u>Final Completion Report:</u> The Recipient will submit to the Parties, pursuant to the notice provision in the Consent Decree, a final Completion Report within 30 days of completion of the Projects, or within 30 days of the fully expending the allocated funds.  The report will contain at a minimum:

    - A detailed description of the Projects as implemented;

- A summary table identifying deliverables and tasks for the Projects along with the associated completion dates;

- A description of any operating problems encountered and the solutions thereto;

- A full expense accounting including itemized costs, documented by copies of purchase orders, contracts, receipts or canceled checks;

- Certification and demonstration that the Projects have been fully implemented pursuant to the provisions of the Consent Decree and this Appendix A;

- A description of the environmental and public health benefits resulting from implementation of the Projects along with quantification of the outcomes and benefits;

- Examples of brochures, educational or outreach materials developed or produced as part of the Projects; and

- Photographs documenting the Projects.